# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| AMERICAN ALLIANCE FOR EQUAL RIGHTS, | | |
| | *Plaintiff*, | |
| v. | | Case No. 24-1209 |
| SOUTHWEST AIRLINES CO., | | |
| | *Defendant*. | |

# COMPLAINT

The American Alliance for Equal Rights brings this action against Southwest Airlines under the Civil Rights Acts of 1866 and 1964. The Alliance seeks declaratory relief, injunctive relief, and nominal damages.

1. "[R]acial discrimination is invidious in all contexts." *SFFA v. Harvard*, 600 U.S. 181, 214 (2023) (cleaned up). Yet Southwest is inking contracts with some ethnicities but not others. Under its ¡Lánzate! Travel Award Program, Southwest awards free flights to students every year. In exchange for a shot at the prize, applicants must agree to the airline's Contract of Carriage; license away their name, image, and likeness; hand over their personal data; and more.

> **Is this program ONLY for Hispanic students?**
> **Yes**, student must identify direct or parental ties to a specific country to determine Hispanic origin.

2. Eligibility for the program depends on ethnicity. Southwest says "Yes" when asked whether "this program [is] ONLY for Hispanic students." *2024 ¡Lánzate!/Take Off! FAQs* (archived May 2, 2024), perma.cc/D59G-WWLM. And the airline makes applicants "identify [their] Hispanic origin" when they apply. *2024 ¡Lánzate!/Take Off! Rules and Regulations* (archived May 2, 2024), perma.cc/K68Q-5SSR (*Rules and Regulations*).

1

3. This kind of rank discrimination was never lawful, even before *Harvard* held that colleges cannot use race in admissions. But in case Southwest needed a reminder, *Harvard* reaffirms that "[e]liminating racial discrimination means eliminating all of it." 600 U.S. at 206. No racial discrimination is benign: It always "demeans the dignity and worth" of every American "to be judged" by his ethnicity instead of by his "own merit and essential qualities." *Id.* at 220.

4. That principle is just as true under the Constitution as it is under Title VI and 42 U.S.C. §1981—two federal statutes that bar companies like Southwest from discriminating based on race or ethnicity. Because Southwest's program is a contract that discriminates on its face, it violates §1981. And because the airline takes federal funds, it violates Title VI too.

5. The Alliance has members who were excluded from the program this year because they are the wrong ethnicity, and who will be excluded again next year if Southwest is not enjoined. The Alliance is entitled to relief.

## PARTIES

6. The American Alliance for Equal Rights is a nationwide membership organization dedicated to ending racial and ethnic preferences nationwide. The Alliance was founded in 2021, and it was approved by the IRS as a 501(c)(3) tax-exempt organization the same year. The Alliance has roughly 200 members, and its membership continues to grow.

7. The Alliance's members are actively involved in the organization and its affairs. Members voluntarily join the Alliance. They pay dues. They receive updates. And they offer input on the Alliance's litigation and other activities.

8. Two of the Alliance's members are Members A and B. They authorized the Alliance to vindicate their rights in this suit, and the Alliance represents them in good faith.

9. Southwest Airlines is an "air carrier" that "provide[s] air transportation" worldwide. 49 U.S.C. §40102(a)(2). Southwest runs the challenged program, oversees its implementation, and owns the trademark for "¡Lánzate!"—the program's official label. *Official Gazette of the United States Patent and Trademark Office: Trademarks* TM 1422 (Oct. 17, 2006), perma.cc/V8PN-GTMM. Southwest is headquartered in Dallas, Texas, *Corporate Facts* (Mar. 31, 2023), perma.cc/5RVA-QDM3, and it receives "federal financial assistance," 42 U.S.C. §2000d.

## JURISDICTION AND VENUE

10. This Court has subject-matter jurisdiction under 28 U.S.C. §1331 because this case "aris[es] under the … laws … of the United States."

11. Venue is proper under 28 U.S.C. §1391 because Southwest Airlines "resides" in Dallas and "a substantial part of the events" occurred here.

## FACTS

### I. The ¡Lánzate! program discriminates based on ethnicity.

12. The ¡Lánzate! program discriminates. Under the program's "frequently asked questions" page, Southwest asks, "Is this program ONLY for Hispanic students?" *2024 ¡Lánzate!/Take Off! FAQs* (archived May 2, 2024), perma.cc/D59G-WWLM. The airline's answer: "Yes." *Id.* "[A] student must identify direct or parental ties to a specific country to determine Hispanic origin." *Id.*

13. Southwest's application page enforces this racial bar. According to Southwest, "student[s] must identify direct or parental ties to a specific country to determine Hispanic origin on the application." *¡Lánzate!/Take Off! Higher Education Travel Award Program* (archived

3

May 2, 2024), perma.cc/SC9N-Q8Y6 (*Application Page*). The program's "Rules and Regulations" reiterate that rule, stressing that students "must identify direct or parental ties to a specific country to determine Hispanic origin." *Rules and Regulations*.

14. Shortly before the April 2024 deadline, Members A and B tried to apply to Southwest's most recent round of the program. But after gathering the necessary forms, writing the required essays, and completely filling out their applications, Members A and B couldn't click submit because they had to "agree to" the program's rules. Because those rules require applicants to be verifiably Hispanic, Members A and B were excluded.

15. After Members A and B faced this racial exclusion and joined the Alliance, the Alliance started researching the program further. The Alliance learned that Southwest has run the ¡Lánzate! program for two decades. As far as the Alliance can tell, Southwest has *always* required applicants to identify their "Hispanic origin on the application." *Applications Are Open! Southwest Airlines Teams Up with the Hispanic Association of Colleges and Universities to Make Dreams Take Flight* (Mar. 1, 2018), perma.cc/8GLW-HEZ2; *accord "¡Lánzate!" Premio Universitario de Southwest Airlines* (2012), perma.cc/FD8B-SCAS (requiring applicants to "identify direct or parental ties to a specific country" so that Southwest can "determine [their] Hispanic origin").

## II. The program involves contracts.

16. When students submit their applications, they and Southwest agree to four contracts: a "Contract of Carriage," a "Privacy Policy," the program's "Rules and Regulations," and another set of rules for the airline's "e-pass" program. *Application Page*. Those contracts impose several obligations on the airline and applicants.

4

17. For Southwest, the program promises to give applicants the chance to be one of "185 students" who win eight free flights on any "Southwest-operated, published, scheduled service in the United States." *Application Page*. The value of those passes is at least $1,500 per winner. So Southwest has promised to pay out at least $250,000 in prizes each cycle—on top of the "more than $2 million" that the airline has paid in the last twenty years. *Applications Open Now For ¡Lánzate!/Take Off! Higher Education Travel Award* (Apr. 7, 2022), perma.cc/4HCY-HVEL.

18. Southwest also agrees to follow its Contract of Carriage. The contract's "terms"—which span 56 pages and contain 57 sections—"govern all … services provided by" Southwest. *Contract of Carriage* 2-4 (Dec. 14, 2023), perma.cc/W3J6-FZN2. Those terms impose several "obligation[s]" on the airline, requiring Southwest to "refund" certain flights, "Provide a Flight Credit" for others, and offer passengers additional flights at "no additional charge." *Id.* at 4, 9, 17-18, 21. And the Contract of Carriage requires Southwest to ship two "Checked Bag[s] without charge" and "compensate the Passenger" if those bags are "damage[d]." *Id.* at 37, 42-43.

19. Southwest also must follow the rules in its e-pass brochure. When a winner "accept[s] … the Southwest flight e-pass(es)," she triggers a series of reciprocal obligations between herself and airline. *Southwest® Flight E-pass Domestic Certificate* (archived May 17, 2024), perma.cc/23ME-FETY. Those rules require Southwest to pay e-pass holders up "to $3,500" in damages if the airline harms their "baggage" or "delay[s]" its "delivery." *Id.* at 3. The rules also require Southwest to "compensat[e]" e-pass holders when the airline overbooks a flight.

5

*Id.* And the rules require Southwest to send every passenger "the[ir] Contract of Carriage" by mail and "free of charge." *Id.*

20. In exchange for all that, Southwest gets a lot in return. For a shot at the prize, applicants must agree to five broad terms: they must follow Southwest's Contract of Carriage; hand over their personal data; license away their name, image, and likeness; release Southwest from any liability; and sign a class-action waiver, choice-of-law clause, and indemnification agreement.

21. To apply for ¡Lánzate!, students must agree to Southwest's "Contract of Carriage." *Application Page.* As part of that contract, applicants must let Southwest "collect, process, retain, and use" their "personal data" for a host of reasons, including "sales and marketing," "customer relations," and "statistical analysis." *Contract of Carriage* 56 (cleaned up). Winners also must let Southwest transfer that data to others, including the airline's "subcontractors, agents, affiliates, marketing partners, other carriers, and government agencies." *Id.*

22. Applicants must license away their name, image, and likeness too. To submit an application, students must "agree" to Southwest's "Privacy Policy," which requires them to give "Southwest Airlines and HACU … the right to use [their] name, voice, likeness, essays, and/or photograph and biographical information." *2024 ¡Lánzate!/Take Off! Privacy Policy/Student Certification* (archived May 2, 2024), perma.cc/4DUL-QM2R. And once an applicant hands over that info, Southwest can use it "for advertising and promotional purposes"—all without any "compensation" or advanced "notice." *Id.*

23. Applicants must promise not to sue Southwest as well. When they click submit, applicants agree "to hold" the airline "harmless against any and all claims or liability arising

6

directly or indirectly from use or misuse of a travel award or participation in the Award Program." *Id.* That waiver broadly applies to, among others, "Southwest Airlines" and its "parent, subsidiary and affiliated corporations," "officers, shareholders, directors, employees, agents and representatives." *Id.* On top of that, the waiver purports to extinguish "all" the "claims and rights" that an applicant might have. *Id.*; *accord Contract of Carriage* 5 ("[T]he Carrier shall not be liable for any consequential, compensatory, indirect, incidental, or punitive damages arising out of or in connection with the performance of its obligations under this Contract of Carriage.").

24. Winners must forfeit important legal protections too. They must agree to a "class action waiver." *Contract of Carriage* 55 (cleaned up). And they must follow a "choice of law" clause. *Id.* (cleaned up). If they don't, Southwest can find them in "material breach of th[e] contract," *id.* at 4, and invoke its right to "confiscate the[ir] ticket," "refuse to allow the[m] to board," or "cancel any remaining portion of the[ir] itinerary." *Id.* at 17 (cleaned up).

25. Still other obligations remain. Southwest rigidly regulates how winners can use the prize, instructing applicants that their tickets are "non-refundable," "non-transferrable," and "not redeemable for cash." *Application Page*. The airline also limits how winners can use their tickets, warning applicants that they can't use them for travel on Southwest's "interline or codeshare service," "to/from Puerto Rico," or after "August 1, 2025." *Id.* Breaking any of those rules, the airline cautions, can "result in cancellation of the Southwest flight e-pass(es)." *Id.*

## III. Southwest's discrimination harms the Alliance's members.

26. Two of the Alliance's members—A and B—were excluded from Southwest's program because of their ethnicity. Both tried to apply this cycle and sincerely want to apply and win. And both are ready and able to apply for the next cycle. But both can't because they're not Hispanic.

27. Members A and B are dues-paying members of the Alliance. They are pseudonymous because they don't want Southwest to hold their involvement in this lawsuit against them when selecting winners next time. And they don't want their classmates, professors, or employers to retaliate against them because of their involvement with the Alliance or their opposition to race-based programs.

28. Members A and B meet all the program's requirements aside from being Hispanic. To apply, students must satisfy four objective requirements. They must be 18 years or older, have a 2.5 GPA or higher, and be in good standing at their school. *Application Page.* They must follow all federal-aviation regulations, own a valid ID, agree to Southwest's travel instructions, and go to school at least 200 miles away from home. *Id.* They also must get an enrollment-verification form and apply before the deadline (this year, April 27, 2024). *Id.* And they must write several essays that "discuss socio-economic need," "financial need," and "cultural considerations," among other topics. *Id.*

29. Member A satisfies all those requirements. He's over the age of 18, has at least a 2.5 GPA, and is in good academic standing at the college he attends. He follows all federal-aviation regulations, has a valid photo ID, agrees to Southwest's travel instructions, and lives at least 200 miles from home (he's roughly 300 miles from home). He got an enrollment-

8

verification form and completed his application—including all the essays—two days before the deadline.

30. Same for Member B. She is over the age of 18 and is in good academic standing at the medical school she attends. She follows all federal-aviation regulations, has a valid photo ID, agrees to Southwest's travel instructions, and lives at least 200 miles from home (she's roughly 2,000 miles from home). And she wrote all her essays, collected all the required forms, and filled out her entire application one day before the deadline.

31. But Members A and B couldn't click submit. Before submitting their applications, these members read the final prompt, which says, "By clicking here, I agree to the above Terms and Conditions." Those terms and conditions make applicants "agree to the Official Rules and Regulations of the Travel Award Program." And those rules and regulations require applicants to be Hispanic and identify their Hispanic country of origin.

32. But Member A is Asian, not Hispanic. His parents are from China—not Spain, Mexico, or any other Spanish-speaking country. *See* U.S. Census Bur., *The Hispanic Population and its Origin* (archived May 13, 2024), perma.cc/C8MH-9P9J (defining "Hispanic").

33. Member B isn't Hispanic either; she's white. Her parents aren't from a Hispanic country; they're from Russia.

34. Members A and B find Southwest's discrimination against them deflating, disheartening, offensive, and hurtful. That discrimination is all the more hurtful because they could have used those free tickets to help their family, improve their finances, and support their academics.

35. Though Members A and B were excluded from the last cycle, they would apply again for the next one—should a court order Southwest to end its discrimination. Members A and B are ready to apply for the next round, still have all the necessary information from the last application they filled out, and would apply again if a court ordered Southwest to stop discriminating. They will continue to meet all the program's nonethnic requirements, and they will remain ready to satisfy the program's nonethnic obligations, terms, and conditions.

## COUNT I
## VIOLATION OF THE CIVIL RIGHTS ACT OF 1866
## 42 U.S.C. §1981

36. The Alliance repeats and realleges each of its prior allegations.

37. Southwest is violating §1981 by intentionally excluding certain applicants from contractual relationships because of their ethnicity. Section 1981 guarantees "[a]ll persons … the same right … to make and enforce contracts," 42 U.S.C. §1981(a), prohibiting "discrimination in the making or enforcement of contracts against, or in favor of, any race," *Gratz v. Bollinger*, 539 U.S. 244, 276 n.23 (2003) (cleaned up).

38. The program falls within the statute's scope. *E.g.*, *Am. All. for Equal Rights v. Fearless Fund* (*Fearless II*), 2023 WL 6520763, at *1 (11th Cir. Sept. 30).

39. Section 1981 covers private parties like Southwest. The Act applies to governmental and "nongovernmental" actors, 42 U.S.C. §1981(c), "provid[ing] a cause of action for public or private discrimination based on race," *Jett v. Dall. Indep. Sch. Dist.*, 798 F.2d 748, 762 (5th Cir. 1986); *accord Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 459-60 (1975). Section 1981 authorizes "both equitable and legal relief," including "damages." *Johnson*, 421 U.S. at 460.

40. Member A falls within §1981's ambit, whose "broad terms" bar discrimination "against, or in favor of, any race." *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 295 (1976). Titled "Equal rights under the law," §1981 "guarantee[s] continuous equality between white and nonwhite citizens," *Jam v. Int'l Fin. Corp.*, 139 S.Ct. 759, 768 (2019), by protecting the "equal right of all persons … to make and enforce contracts without respect to race," *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 474 (2006) (cleaned up). As the Fifth Circuit has held, §1981 "forbids racial discrimination in the making and enforcement of private contracts … whether the aggrieved party is black or white." *Bobo v. ITT, Cont'l Baking Co.*, 662 F.2d 340, 342 (5th Cir. 1981).

41. Southwest's program is a contract under §1981. "The term contract, as used in §1981, refers to a right in the promisee against the promisor, with a correlative special duty in the promisor to the promisee of rendering the performance promised." *Adams v. McDougal*, 695 F.2d 104, 108 (5th Cir. 1983) (cleaned up). Southwest's program fits that definition. When they apply, students must give Southwest their personal data; license away their name, image, and likeness; and agree to immunize the airline from almost all liability. In return, Southwest gives them a shot at free tickets, free checked bags, and more.

42. In fact, Southwest's program is a contest. Southwest judges the quality of each Hispanic applicant's "essays" and "select[s]" winners based on "merit"—a "bona fide contest." *Brooklyn Daily Eagle v. Voorhies*, 181 F. 579, 582-83 (C.C.E.D.N.Y. 1910); *accord Haskell v. Time, Inc.*, 857 F. Supp. 1392, 1404-05 (E.D. Cal. 1994) ("answering an essay question" is "a contest"). Contests are classic contracts. *E.g.*, *Am. All. for Equal Rights v. Fearless Fund* (*Fearless I*), 2023 WL 6295121, at *4 (N.D. Ga. Sept. 27) (agreeing that "courts construe contests as

11

offers for a unilateral contract"). "[N]early all jurisdictions have adopted the rule that contract law governs the sponsor-contestant relationship." *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1104 (10th Cir. 2001) (cleaned up).

43. Southwest's program implicates a right that §1981 protects—the right to "*make* … contracts." 42 U.S.C. §1981(a) (emphasis added). "[A] contractual relationship need not already exist" to trigger §1981; the law "protects the would-be contractor along with those who already have made contracts." *Domino's*, 546 U.S. at 476. So businesses like Southwest are liable "under §1981 when, for racially motivated reasons, they prevented individuals who 'sought to enter into contractual relationships' from doing so." *Id.* (quoting *Runyon v. McCrary*, 427 U.S. 160, 172 (1976)). So too here: Southwest won't let Members A and B enter the program—a "contractual relationshi[p]"—so it's liable under §1981. *Id.*

44. Southwest's discrimination is intentional. "[P]roof of a facially discriminatory … policy"—or even "a corporate decision maker's express[ed] desire to avoid" contracting with members of a certain race—is "direct evidence of discriminatory intent." *Amini v. Oberlin Coll.*, 440 F.3d 350, 359 (6th Cir. 2006) (cleaned up). Here there's both. The program "facially discriminat[es]" against everyone who's not Hispanic. *Id.* And Southwest's "corporate decision maker[s]" have expressed a "desire to avoid" contracting with students who aren't Hispanic. *Id.* Southwest has repeatedly said that winners must be Hispanic; that the program is "for Hispanic students," *Applications Now Open for the ¡Lánzate!/Take Off! Travel Award Program!* (Mar. 26, 2024), perma.cc/AQR8-H3EU; and that the program is meant "to help Hispanic students," *20th Annual ¡Lánzate!/Take Off! Higher Education Travel Award* (archived May

12

2, 2024), perma.cc/D7W2-R3LH. So the Alliance "is not required to make any further allegations of discriminatory intent or animus." *Juarez v. Nw. Mut. Life Ins.*, 69 F. Supp. 3d 364, 370 (S.D.N.Y. 2014).

45. Southwest's discrimination cannot survive strict scrutiny. Among other reasons, it violates 49 U.S.C. §40127(a) because it discriminates against individuals "in air transportation." *Id.* Titled, "Prohibitions on discrimination," 49 U.S.C. §40127(a) states that "[a]n air carrier or foreign air carrier may not subject a person in air transportation to discrimination on the basis of race, color, national origin, religion, sex, or ancestry." *Id.* That language admits of no exceptions. Southwest also has obvious race-neutral alternatives, like tying the program to need instead of ethnicity.

## COUNT II
## VIOLATION OF THE CIVIL RIGHTS ACT OF 1964
## 42 U.S.C. §2000D

46. The Alliance repeats and realleges each of its prior allegations.

47. Southwest is violating Title VI by taking money from the federal government while discriminating against non-Hispanics. Title VI instructs that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. §2000d. To state a claim under that statute, the Alliance must "allege" that Southwest "receiv[es] federal financial assistance" and "intentionally discriminated" against Members A and B. *Easley v. Univ. of Tex. at Arlington*, 984 F. Supp. 2d 631, 635 (N.D. Tex. 2013); *accord Alexander v. Sandoval*, 532 U.S. 275, 280 (2001).

48. The Alliance can sue under Title VI. "[I]t is beyond dispute that private individuals may sue to enforce" Title VI. *Cummings v. Premier Rehab Keller, PLLC*, 596 U.S. 212, 218 (2022) (cleaned up). And when they sue, private parties can seek nominal damages and equitable relief. *Id.* at 221; *accord Tolbert v. Queens Coll.*, 242 F.3d 58, 74 (2d Cir. 2001) ("[A] plaintiff who has proven a civil rights violation" under §1981 and Title VI "is entitled as a matter of law to an award of nominal damages.").

49. Southwest is intentionally "discriminat[ing]" against Members A and B. *See* 42 U.S.C. §2000d; *accord Sandoval*, 532 U.S. at 280. Intentional discrimination is unlawful whenever it fails strict scrutiny. *Harvard*, 600 U.S. at 198 n.2. And the program here fails: It cannot rely on either of the "two compelling interests" that might justify ethnic classifications, and its outright ban on non-Hispanics is not "narrowly tailored." *Id.* at 207.

50. The program is also a "program or activity" that receives "financial assistance." 42 U.S.C. §2000d. Under Title VI, the phrase "program or activity" includes "all of the operations" of a recipient whenever federal financial assistance "is extended" to the entire company—or, in the language of Title VI, whenever the assistance "is extended" to the recipient "as a whole." 42 U.S.C. §2000d-4a(3)(A)(i). So "all" of a company's "operations" must be race neutral if the company "*as a whole*"—rather than merely *a part* of that company, like a division—is receiving "Federal financial assistance." *Id.* (emphasis added).

51. Southwest satisfies that test. In 2020 and 2022, the CARES Act directed the Secretary of Transportation to "provide financial assistance" to America's airline industry, instructing the Secretary to give up to 44 billion dollars to "air carriers" like Southwest. 15 U.S.C. §9072(a)(1)-(2); *accord* 15 U.S.C. §9092(a)(1). Under that program, Southwest received three

14

multi-billion-dollar "direct payments." USASpending.gov, *Direct Payments to Southwest Airlines Co.* (archived May 15, 2024), perma.cc/Q39H-UC5Q; *accord* USASpending.gov, *Small Business Administration (SBA) to Southwest Airlines* (archived May 16, 2024), perma.cc/M8MN-MW5W.

52. Those payments are "federal financial assistance," 42 U.S.C. §2000d, and Southwest received them "as a whole," §2000d-4a(3)(A)(i). The CARES Act uses the same verbiage as Title VI, dubbing all these payments as "financial assistance." 15 U.S.C. §9072(a)(1)-(2); *accord* 15 U.S.C. §9092(a)(1) (same). And Southwest received that assistance "as a whole." 42 U.S.C. §2000d-4a(3)(A)(i). According to one of the airline's contracts, the "Recipient" of the funds wasn't just a division of Southwest or a Southwest subsidiary—it was "Southwest Airlines Co." itself. *E.g.*, *Payroll Support Program Agreement* (Apr. 20, 2020), perma.cc/SFD4-N8ZN. So the airline "as a whole" received the funds—a fact that even Southwest concedes. *See id.* (Southwest acknowledging in the contract that it had to "comply with … Title VI of the Civil Rights Act").

## PRAYER FOR RELIEF

53. The Alliance respectfully asks this Court to enter judgment in its favor and against Southwest and grant the following relief:

   A. A declaratory judgment that the program, as currently constituted, violates 42 U.S.C. §1981 and Title VI.

   B. A temporary restraining order and preliminary injunction barring Southwest from closing the next application period, selecting winners, or enforcing the program's ethnic eligibility criteria.

   C. A permanent injunction barring enforcement of the program's ethnic eligibility criteria.

   D. Nominal damages of $0.01.

E. Reasonable costs and expenses of this action, including attorneys' fees, under 42 U.S.C. §1988 and any other applicable laws.

F. All other relief that the Alliance is entitled to.

Dated: May 20, 2024

Adam K. Mortara*
 (TN Bar No. 40089)
LAWFAIR LLC
40 Burton Hills Blvd., Ste. 200
Nashville, TN 37215
(773) 750-7154
mortara@lawfairllc.com

Respectfully submitted,

/s/ *Steven C. Begakis*
Thomas R. McCarthy*
 (VA Bar No. 47154)
Cameron T. Norris**
 (TN Bar No. 33467)
Steven C. Begakis***
 (ND Tex. No. 95172VA)
R. Gabriel Anderson*
 (TX Bar No. 24129302)
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
tom@consovoymccarthy.com
cam@consovoymccarthy.com
steven@consovoymccarthy.com
gabe@consovoymccarthy.com

*pro hac vice forthcoming
**northern District of Texas admission approved, but awaiting oath ceremony
***member of the Northern District of Texas who resides in Fort Worth