IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| AMERICAN ALLIANCE FOR EQUAL RIGHTS, | § § § | |
| Plaintiff, | § § | |
| VS. | § § | Civil Action No. 3:24-CV-1209-D |
| SOUTHWEST AIRLINES CO., | § § | |
| Defendant. | § § | |

MEMORANDUM OPINION
AND ORDER

In this action challenging as racially discriminatory defendant Southwest Airlines Company's ("Southwest's") now-shuttered ¡Lánzate! Travel Award Program ("Award Program"), Southwest moves to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. Plaintiff American Alliance for Equal Rights ("Alliance") opposes the motion. For the reasons that follow, the court grants the motion in part and denies it in part.

I

Southwest's Award Program provided free flights to select Hispanic students.[1] Since the Award Program's inception two decades ago, applications had always been expressly

_____

[1] The court recounts the background facts favorably to Alliance. Because Southwest makes a facial challenge to the court's subject matter jurisdiction, the court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Williams v. Certain Underwriters At Lloyd's of London*, 398 Fed. Appx. 44, 46 (5th Cir. 2010) (unpublished opinion) (per curiam) (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)).

reserved for students who might "identify direct or parental ties to a specific country to determine [their] Hispanic origin[.]" Compl. ¶ 12 (internal quotation marks omitted). "[T]he Official Rules and Regulations of the [Award Program]. . . . require[d] applicants to be Hispanic and identify their Hispanic country of origin." *Id.* ¶ 31. In April 2024 two of Alliance's members ("Members")—who were fully qualified for the Award Program except that "Member A is Asian," *id.* ¶ 32, and "Member B . . . [is] white[,]" *id.* ¶ 33—"were excluded . . . because . . . . they're not Hispanic." *Id.* ¶ 26.

In May 2024 Alliance filed this lawsuit against Southwest, asserting federal-law claims under the Civil Rights Act of 1866, 42 U.S.C. § 1981 *et seq.* ("§ 1981"), and Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.* ("Title VI"). Shortly thereafter, in August 2024, Southwest executed a covenant ("Covenant") that "'unconditionally and irrevocably' eliminates the challenged [Award Program] provisions from any and all future program application cycles." D. Br. (ECF No. 20) at 1. Southwest also sent Alliance the sum of $0.01 (hereafter, "one cent") together with a letter requesting voluntary dismissal of this lawsuit. After Alliance returned the one cent and declined to voluntarily dismiss this suit, Southwest filed the instant motion to dismiss under Rule 12(b)(1), contending this court lacks subject matter jurisdiction. Alliance opposes the motion in part. The court has heard oral argument.

II

"Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). When challenging subject matter jurisdiction under Rule 12(b)(1), a party can make a facial attack or a factual attack. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. May 1981). If, as here, the party merely files a Rule 12(b)(1) motion, the attack is considered facial, and the court looks only at the sufficiency of the allegations in the complaint and assumes them to be true. *Id.* If the allegations are sufficient to allege jurisdiction, the court must deny the motion. *Id.* This is akin to a Rule 12(b)(6) motion in that the "pleading's allegations are presumed to be true, and '[i]f those allegations sufficiently allege a claim for recovery the complaint stands and the federal court must entertain the suit.'" *Vinmar Overseas, Ltd. v. OceanConnect, LLC*, 2012 WL 3599486, at *4 (S.D. Tex. Aug. 20, 2012) (Rosenthal, J.) (alteration in original) (quoting *Jones v. SuperMedia Inc.*, 281 F.R.D. 282, 286 (N.D. Tex. 2012) (Boyle, J.)). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam) (citation omitted).

"In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of plaintiffs' . . . complaint by 'accepting all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*,

- 3 -

855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (internal quotation marks and alteration omitted) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)).  To survive defendants' motion, plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)) (alteration omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citation omitted).

III

The court first considers whether it has subject matter jurisdiction over Alliance's requests for forward-looking relief in the form of declaratory and injunctive relief. Southwest contends that the Covenant moots these claims.  Alliance responds that "if this Court holds that Southwest's covenant is judicially enforceable, then the Alliance does not

object to the dismissal of its request for forward-looking relief." P. Resp. (ECF No. 28) at 7.

The court concludes that the Covenant moots Alliance's claims to the extent it seeks declaratory and injunctive relief. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000) ("[A] defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur."); *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 93-95 (2013) (holding that a defendant's "unconditional and irrevocable" covenant to refrain from engaging in the allegedly wrongful behavior may satisfy this formidable burden); *Nursery Decals & More, Inc. v. Neat Print, Inc.*, 2023 WL 4884803, at *4 (5th Cir. Aug. 1, 2023) (unpublished opinion) (per curiam) (concluding that certain of plaintiff's claims were mooted by defendant's covenant not to sue and explaining that "[t]he case is moot if the court, considering the covenant's language and the plaintiff's anticipated future activities, is satisfied that it is absolutely clear that the allegedly unlawful activity cannot reasonably be expected to recur."). Because it is undisputed that the Covenant unconditionally and irrevocably eliminates the challenged Award Program provisions from any and all future program application cycles, Alliance's forward-looking claims for declaratory and injunctive relief are moot.

IV

The court considers next whether it has subject matter jurisdiction over Alliance's claims for nominal damages. Southwest contends that the court lacks subject matter jurisdiction over these claims because (1) Alliance lacks associational standing to assert them and (2) Southwest's payment of one cent to Alliance rendered them moot.[2]

A

Article III of the United States Constitution confines the jurisdiction of a federal court to an actual "case[]" or "controvers[y]." U.S. Const. art. III, § 2. The standing doctrine implements this constitutional limitation by requiring that a plaintiff establish "a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Warth v. Seldin*, 422 U.S. 490, 498 (1975) (citation and internal quotation marks omitted). As the party seeking to invoke this court's jurisdiction, Alliance bears the burden of establishing standing according to the degree of evidence required at the pleading stage of litigation. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Procter & Gamble Co. v. Amway Corp.*,

---

[2]The court may address Southwest's Article III jurisdictional grounds in any order. *See Sierra Club v. Glickman*, 156 F.3d 606, 619-620 (5th Cir. 1998) ("[S]tanding [is not] the threshold issue that a court must address; rather[] . . . Article III jurisdiction, of which standing, mootness, and ripeness are equally important parts, [is] the threshold issue that a court must address. When two or more Article III jurisdictional grounds are presented to the court as grounds for dismissing the action, we do not think that the court need address all of those arguments or address the arguments in any particular order."); 13B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3533.1 (3d ed. 2024) (footnote omitted) ("[T]here is no hierarchy of Article III principles.").

242 F.3d 539, 560 (5th Cir. 2001), *abrogated in part on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 132 (2014).

Alliance asserts standing on behalf of its members:

> An association has standing to bring a suit on behalf of its members when: (1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members.

*Texans United for a Safe Econ. Educ. Fund v. Crown Cent. Petroleum Corp.*, 207 F.3d 789, 792 (5th Cir. 2000) (quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977)); *see Friends of the Earth, Inc. v. Chevron Chem. Co.*, 129 F.3d 826, 827-28 (5th Cir. 1997)).

Southwest disputes only the third prong. Although the "first two components of *Hunt* address constitutional requirements, [] the third prong is solely prudential." *Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*, 627 F.3d 547, 550 (5th Cir. 2010) (citing *United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*, 517 U.S. 544, 555 (1996)). "The third prong 'focuses importantly on matters of administrative convenience and efficiency.'" *Id.* at 551 (quoting *Brown Grp.*, 517 U.S. at 557). "Courts assess this prong by examining both the relief requested and the claims asserted." *Id.*

B

Examining both the relief requested and claims asserted, the court discerns no administrative inconvenience or inefficiency from, and therefore no prudential impediment to, Alliance's asserting its nominal damages claims on the Members' behalf.

The relief that Alliance requests—one cent in nominal damages—does not "require[] the participation of individual members."[3] *Texans United*, 207 F.3d at 792; *see Uzuegbunam v. Preczewski*, 592 U.S. 279, 289 (2021) (internal quotation marks omitted) ("[A] party whose rights are invaded can always recover nominal damages without furnishing any evidence of actual damage."); *Carey v. Piphus*, 435 U.S. 247, 266 (1978) (holding that "the denial of procedural due process should be actionable for nominal damages without proof of actual injury"); *id.* at 266 n.24 (collecting lower court cases that "approved the award of nominal damages under § 1983 where deprivations of constitutional rights are not shown to

---

[3]Although "[i]n general, an association's action for damages running solely to its members would be barred for want of the association's standing to sue[,]" *Ass'n of Am. Physicians & Surgeons, Inc.*, 627 F.3d at 551, under Supreme Court and Fifth Circuit precedent, there is no categorical bar against associational standing to seek damages. *See Brown Grp.*, 517 U.S. at 554 n.5 (reserving the question whether *Hunt*'s "third prong would bar a 'simplified' claim for damages"); *Self-Ins. Inst. of Am., Inc. v. Korioth*, 53 F.3d 694, 695-96 (5th Cir. 1995) (describing *Hunt*'s third prong as depending on whether "the fact and extent of injury will require individualized proof"). Indeed, a number of federal courts have recognized associational standing to seek nominal damages. *See Moms for Liberty v. Brevard Pub. Sch.*, 118 F.4th 1324, 1330, 1330 n.4 (11th Cir. 2024); *Knife Rts., Inc. v. Bonta*, 2024 WL 4224809, at *4 (S.D. Cal. Aug. 23, 2024); *Nat'l Shooting Sports Found. v. Bonta*, 2024 WL 710892, at *2 (S.D. Cal. Feb. 21, 2024); *Glob. Impact Ministries v. Mecklenburg Cnty.*, 2021 WL 982333, at *3 (W.D.N.C. Mar. 16, 2021); *Am. Humanist Ass'n v. Perry*, 303 F.Supp.3d 421, 427, 433 (E.D.N.C. 2018).

have caused actual injury"); *Gore v. Turner*, 563 F.2d 159, 164 (5th Cir. 1977) ("[E]ven in the absence of proof of the extent of such damages, [the plaintiff] would be entitled to nominal general damages."); *Hodge v. Seiler*, 558 F.2d 284, 287 (5th Cir. 1977) ("It was recognized as long ago as 1919 that damage could be presumed from the denial of a constitutional right.").

Nor do Alliance's claims, which allege discrimination in violation of § 1981 and Title VI, "require[] the participation of individual members." *Texans United*, 207 F.3d at 792; *see Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 199 (2023) (explaining in Title VI case that "Respondents do not contest that SFFA satisfies the three-part test for organizational standing articulated in *Hunt*, and like the courts below, we find no basis in the record to conclude otherwise"); *Students for Fair Admissions, Inc. v. Univ. of Tex. at Austin*, 37 F.4th 1078, 1086 (5th Cir. 2022) (concluding that organization had associational standing to assert § 1981 and Title VI claims); *Am. All. for Equal Rts. v. Founders First Cmty. Dev. Corp.*, 2024 WL 3625684, at *2 (N.D. Tex. July 31, 2024) (O'Connor, J.) (cleaned up) ("[T]he Alliance's Section 1981 claim does not require the participation of its individual members because the harm is their inability to compete on equal footing (and not their ultimate inability to obtain the grant."); *see also Neighborhood Action Coal. v. City of Canton, Ohio*, 882 F.2d 1012, 1017 (6th Cir. 1989) (reversing dismissal on associational standing grounds of § 1981 and Title VI claims where claims satisfied, *inter alia*, *Hunt*'s third prong); *StandWithUs Ctr. for Legal Just. v. Mass. Inst. of*

*Tech.*, 2024 WL 3596916, at *3 (D. Mass. July 30, 2024) (concluding that organization had standing to assert Title VI claim for purposes of injunctive relief "[e]ven if [organization's] claims require proof specific to individual members of the association"); *Nat'l Ass'n for Advancement of Colored People v. Ameriquest Mortg. Co.*, 635 F.Supp.2d 1096, 1103 (C.D. Cal. 2009) (concluding that organization had standing to assert § 1981 claim for nominal damages where claim satisfied, *inter alia*, *Hunt*'s third prong), *as amended* (Jan. 13, 2009); *Nat'l Ass'n for Advancement of Colored People, Detroit Branch v. Detroit Police Officers Ass'n (D.P.O.A.)*, 525 F. Supp. 1215, 1220 (E.D. Mich. 1981) (concluding that organization had standing to assert § 1981 claim because, *inter alia*, "the basic liability issues can be appropriately resolved in a group context, [so] the participation of the individual members of the NAACP is not indispensable to a proper resolution of this case"). *But see Do No Harm v. Pfizer Inc.*, 646 F.Supp.3d 490, 508 (S.D.N.Y. 2022) (explaining that Second Circuit precedent precludes associational standing for § 1981 and Title VI claims notwithstanding Supreme Court's seemingly conflicting dicta in *Warth*, 422 U.S. at 517-18), *aff'd*, 96 F.4th 106 (2d Cir. 2024).

Accordingly, Alliance has associational standing to assert its claims for nominal damages.

### C

Finally, the court considers whether Alliance's claims for nominal damages have been mooted by Southwest's declined proffer of one cent to Alliance.

1

"Mootness is a jurisdictional question that goes to the heart of Article III's case-and-controversy requirement." *Crocker v. Austin*, 115 F.4th 660, 667 (5th Cir. 2024) (internal quotation marks omitted).

> We have interpreted this requirement to demand that an actual controversy be extant at all stages of review, not merely at the time the complaint is filed.  If an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during litigation, the action can no longer proceed and must be dismissed as moot.  A case becomes moot, however, only when it is impossible for a court to grant any effectual relief whatever to the prevailing party.  As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot.

*Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 160-61 (2016) (cleaned up), *as revised* (Feb. 9, 2016).

An unaccepted settlement offer is insufficient to render a case moot.  *See id.* at 162; *Hooks v. Landmark Indus., Inc.*, 797 F.3d 309, 315 (5th Cir. 2015) (internal quotation marks omitted) ("[A]n unaccepted offer of judgment to a named plaintiff in a class action is a legal nullity, with no operative effect.").

> When a plaintiff rejects such an offer—however good the terms—[its] interest in the lawsuit remains just what it was before.  And so too does the court's ability to grant [it] relief. An unaccepted settlement offer—like any unaccepted contract offer—is a legal nullity, with no operative effect.  As every first-year law student learns, the recipient's rejection of an offer leaves the matter as if no offer had ever been made.

*Campbell-Ewald*, 577 U.S. at 162 (cleaned up) (quoting *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 81 (2013) (Kagan, J., dissenting)) ("We now adopt JUSTICE KAGAN'S analysis, as has every Court of Appeals ruling on the issue post *Genesis Healthcare*.").

2

Southwest's unsuccessful tender of one cent to Alliance was plainly an unaccepted offer that could not moot Alliance's nominal damages claims. The tender of one cent together with a request that Alliance voluntarily dismiss this lawsuit was a textbook offer to settle Alliance's nominal damages claims. *See* Restatement (Second) of Contracts § 24 (1981) ("An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it.").[4] Southwest's offer conferred on Alliance the power of acceptance. *See id.* § 35(1) ("An offer gives to the offeree a continuing power to complete the manifestation of mutual assent by acceptance of the offer."). Alliance then promptly and unequivocally rejected the offer by returning the one cent to Southwest. *See id.* § 38(2) ("A manifestation of intention not to accept an offer is a rejection unless the offeree manifests an intention to take it under further advisement."). Southwest's tender became "an unaccepted settlement

---

[4]Southwest's tender was not, for example, a debtor's unconditional tender of the principal amount due on a debt, which would extinguish the debt regardless of the creditor's acceptance. *See* 47 C.J.S. Interest & Usury § 130 (footnote omitted) ("The debtor's payment of the principal debt stops the running of interest since payment extinguishes the debt.").

- 12 -

offer [having] no force." *Campbell-Ewald*, 577 U.S. at 156; *see id.* at 157-63 (explaining that defendant's rejected offer to pay plaintiff "his costs, excluding attorney's fees and $1,503 per message for the May 2006 text message and any other text message [plaintiff] could show he had received" was an unaccepted settlement offer that did not moot plaintiff's claims). "Like other unaccepted contract offers, it creates no lasting right or obligation. With the offer off the table, and [Southwest's] continuing denial of liability, adversity between the parties persists." *Id.* at 156.[5]

Accordingly, Alliance's claims for nominal damages have not become moot, and the court has subject matter jurisdiction over them.

---

[5]Southwest's reliance on a purported exception to *Campbell-Ewald*—in which a defendant may moot a case by giving the plaintiff all the relief that it asks for, *see Uzuegbunam*, 592 U.S. at 303 (Roberts, C.J., dissenting) ("Where a plaintiff asks only for a dollar, the defendant should be able to end the case by giving him a dollar, without the court needing to pass on the merits of the plaintiff's claims."); *id.* at 293-94 (Kavanaugh, J., concurring) (expressing agreement)—is misplaced. Even if this court were persuaded that Chief Justice Roberts is correct, dissenting opinions are not the law. *See Students for Fair Admissions.*, 600 U.S. at 230 ("A dissenting opinion is generally not the best source of legal advice on how to comply with the majority opinion."); *Consumers' Rsch. v. Fed. Commc'ns Comm'n*, 63 F.4th 441, 449 n.5 (5th Cir.) ("We note that much of Petitioners' nondelegation argument relies primarily on the dissents of the Supreme Court's holding . . , which, of course, are not binding on our court."), *reh'g en banc granted, opinion vacated on unrelated grounds*, 72 F.4th 107 (5th Cir. 2023), *and on reh'g en banc*, 109 F.4th 743 (5th Cir. 2024).

*    *    *

For the reasons explained, the court grants in part and denies in part Southwest's motion to dismiss.

**SO ORDERED**.

December 6, 2024.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE

- 14 -