UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| AMERICAN ALLIANCE FOR EQUAL RIGHTS,<br><br>                    Plaintiff,<br><br>   v.<br><br>SOUTHWEST AIRLINES CO.,<br><br>                    Defendant. | Case No. 3:24-cv-01209-D |

**STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA**

The United States submits this Statement of Interest under 28 U.S.C. § 517[1] to make clear that, by offering only Hispanic students the opportunity to enter the 2024 ¡Lánzate!/Take Off! Travel Award Program and denying that opportunity to all other students on the basis of their race and ethnicity, Defendant Southwest Airlines, Co. (Southwest) facially discriminated against non-Hispanic students in violation of 42 U.S.C. § 1981.[2]

**INTEREST OF THE UNITED STATES**

The United States has a strong interest in protecting the civil rights of all Americans, including the right to be free from discrimination on the basis of protected characteristics. While

---

[1] Under 28 U.S.C. § 517, "[t]he Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States."

[2] The United States expresses no view on any issues in this case other than those set forth herein.

1

42 U.S.C. § 1981 is enforced by private action rather than by the Attorney General, the United States nevertheless has an interest in the proper application of § 1981 because, like Title VI of the Civil Rights Act of 1964, 42 U.S.C. 2000d, § 1981's protections are coextensive with the Fourteenth Amendment's Equal Protection Clause. *See Grutter v. Bollinger*, 539 U.S. 306, 343 (2003) (citing *Gen. Bldg. Contractors Assn., Inc. v. Pennsylvania*, 458 U.S. 375, 389-91 (1982) (§ 1981 coextensive with Equal Protection); *Regents of Univ. of California v. Bakke*, 438 U.S. 265, 287 (1978) (Title VI coextensive with Equal Protection)); *see also Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 198 n.2 (2023); *Gratz v. Bollinger*, 539 U.S. 244, 275 n.23 (2003). The United States has responsibility for enforcing Title VI and the availability of relief under § 1981 for acts of racial discrimination may affect the allocation of government resources in enforcing the provisions of Title VI. Furthermore, under Executive Order 14,173, "Ending Illegal Discrimination and Restoring Merit-Based Opportunity," "[i]t is the policy of the United States to protect the civil rights of all Americans and to promote individual initiative, excellence, and hard work." 90 Fed. Reg. 8,633 (Jan. 21, 2025). To that end, the United States seeks "to combat illegal private-sector [diversity, equity, and inclusion] preferences, mandates, policies, programs, and activities." *Id.*

## BACKGROUND

Pending before this Court is the Motion for Summary Judgment filed by Plaintiff American Alliance for Equal Rights (the Alliance), seeking judgment in its favor on its claim

under 42 U.S.C. § 1981[3] challenging Defendant Southwest's 2024 ¡Lánzate!/Take Off! Travel Award Program as discriminatory. Pl.'s Mot. for Summ. J. (hereinafter Pl.'s MSJ) (ECF No. 51); Compl. ¶¶ 36-45 (ECF No. 1).

The Alliance's § 1981 claim is based on the straightforward allegation that Southwest offered the 2024 ¡Lánzate!/Take Off! Travel Award Program subject to an explicitly discriminatory classification: only Hispanic students were eligible. *See* Compl. ¶¶ 2, 12-13, 37, 44. (ECF No. 1). As Southwest describes it, the ¡Lánzate!/Take Off! Travel Award Program has been offered annually for two decades in partnership with the Hispanic Association of Colleges and Universities to "help[] students stay connected with their families and communities while pursuing higher education by awarding Southwest flight passes to students who apply and are selected each year." Def.'s Mot. to Dismiss & Br. in Supp. (hereinafter Def.'s MTD) at 1 (ECF No. 20) (internal quotation marks omitted). But Southwest's prior briefing omits the key fact that students were required to "identify direct or parental ties to a specific country to determine Hispanic origin" to be eligible for the program. *See* Compl. ¶¶ 2, 13 (ECF No. 1) (quoting 2024 ¡Lánzate!/Take Off! Rules and Regulations, Eligibility Criteria, perma.cc/K68Q-5SSR). In a document entitled "2024 ¡Lánzate!/Take Off! Higher Education Travel Award Program, Frequently Asked Questions," Southwest stated: "**Is this program ONLY for Hispanic students? Yes**, students must identify direct or parental ties to a specific country to determine

---

[3] Although the Alliance also raised a Title VI claim in its Complaint (ECF No. 1), it has moved for summary judgment solely on its claim under 42 U.S.C. § 1981 and proposes to withdraw its Title VI claim if its motion is successful, *see* Pl.'s Mot. for Summ. J. at 1 (ECF No. 51). Because the Title VI claim is not at issue in the instant Motion, the United States expresses no opinion with respect to the Title VI claim.

**STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA**                                        3

Hispanic origin." Pl.'s MSJ Ex. D, Pltf.-App. 8 (ECF No. 51-3 at 9); 2024 ¡Lánzate!/Take Off! FAQs (archived May 2, 2024), perma.cc/D59G-WWLM (emphasis in original).

Southwest does not dispute the authenticity of the FAQ or Rules and Regulations documents; rather, Southwest's Answer allows the documents to speak for themselves. *See* Answer ¶ 12 (ECF No. 45) ("Southwest refers to that document as the best evidence of its contents"); ¶ 13 (same). The Alliance asserts that two of its members, who are not Hispanic, attempted to apply for the 2024 ¡Lánzate!/Take Off! Travel Award Program but were unable to meet the stated requirements because of the restriction limiting eligibility to Hispanic students. Compl. ¶¶ 26-34 (ECF No. 1) (describing anonymous Members A and B, of Chinese and Russian descent, respectively).

## DISCUSSION

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens . . . ." 42 U.S.C. § 1981(a). "Among the many statutes that combat racial discrimination, § 1981, originally § 1 of the Civil Rights Act of 1866, 14 Stat. 27, has a specific function: It protects the equal right of '[a]ll persons within the jurisdiction of the United States' to 'make and enforce contracts' without respect to race." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 474-75 (2006) (quoting 42 U.S.C. § 1981(a)). In the years since 1866, courts have clarified that § 1981's protections apply broadly to allegations of racial discrimination, including that based on ethnicity and ancestry. *See Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987) (holding that race discrimination under § 1981 includes ethnicity and ancestry); *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 287 (1976) (holding that the phrase "as is enjoyed by white citizens" should not be read as limiting protections to non-whites, but

"simply as emphasizing the racial character of the rights being protected") (internal quotation marks omitted). A program imposing a racial classification that impedes the equal ability to make and enforce contracts can escape § 1981 liability only if it meets the requirements of strict scrutiny. *See Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 720 (2007) (holding that an express race classification violates Equal Protection Clause unless it is narrowly tailored to achieve a compelling interest).

While Southwest has not admitted that the 2024 ¡Lánzate!/Take Off! Travel Award Program discriminated based on race or ethnicity, there is no dispute that the program was "only for Hispanic students" who identify "direct or parental ties to a specific country." *See* Compl. ¶ 2 (ECF No. 1); 2024 ¡Lánzate!/Take Off! FAQs. "Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Maxim Crane Works, L.P. v. Zurich Am. Ins. Co.*, 11 F.4th 345, 350 (5th Cir. 2021) (per curiam) (quoting Fed. R. Civ. P. 56(a)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Here, the Alliance has presented direct evidence of facial discrimination that, absent contrary evidence or a sufficiently compelling justification, establishes a violation of § 1981 as a matter of law.[4]

    A.    **Discrimination against non-Hispanics violates § 1981.**

Southwest's discrimination against the Alliance's non-Hispanic members constitutes a cognizable basis for a § 1981 violation. *See Saint Francis Coll.*, 481 U.S. at 613 ("intentional

---

[4] The United States expresses no opinion regarding any other elements of the Alliance's § 1981 claim not set forth herein, including but not limited to what constitutes a contract under § 1981.

discrimination solely because of their ancestry or ethnic characteristics. . . is racial discrimination that Congress intended § 1981 to forbid, whether or not it would be classified as racial" in the strictest sense). Courts have permitted claims under § 1981 to proceed where the alleged discrimination involved classification based on "Mexican American" descent or Spanish surname. *See, e.g.*, *Manzanares v. Safeway Stores, Inc.*, 593 F.2d 968, 971 (10th Cir. 1979) ("[S]ection 1981 is directed to racial discrimination primarily, but is not necessarily limited to the technical or restrictive meaning of 'race.'"); *see also Santa Fe Trail Transp. Co.*, 427 U.S. at 287; *Students for Fair Admissions*, 600 U.S. at 235 (Thomas, J., concurring).

Thus, § 1981 prohibits intentionally discriminatory contracting that classifies individuals by their Hispanic ethnicity or race, regardless of whether such classification is intended to preference or to exclude that group. *See White Glove Staffing, Inc. v. Methodist Hosps. of Dallas*, 947 F.3d 301, 308 (5th Cir. 2020) (citing evidence that defendant "'wanted only Hispanics' and did not want 'anybody else'"); *Santa Fe Trail Transp. Co.*, 427 U.S. at 287.

### B. An explicit racial preference in contracting is direct evidence of a § 1981 violation.

An explicit racial classification to determine an individual's eligibility to enter a contract is a clear and unequivocal example of intentional discrimination that violates § 1981. *See Gen. Bldg. Contractors Ass'n*, 458 U.S. at 391 ("§ 1981, like the Equal Protection Clause, can be violated only by purposeful discrimination"). While intentional discrimination may be established in a variety of ways, an "explicitly racial classification" establishes discriminatory intent as a matter of law. *Hunter v. Erickson*, 393 U.S. 385, 389 (1969); *see also Miller v. Johnson*, 515 U.S. 900, 904-05 (1995).

Proof of an express racial classification constitutes direct evidence of intentional discrimination without regard to any "arguably benign motives" that may underlie the decision to impose the classification. *Int'l Union, United Auto. Aerospace & Agric. Implement Workers of Am. v. Johnson Controls, Inc.*, 499 U.S. 187, 199 (1991); *see also Jerge v. City of Hemphill*, 80 F. App'x 347, 350 (5th Cir. 2003) ("Direct evidence is evidence which, if believed, proves the fact of intentional discrimination without inference or presumption." (internal quotation marks omitted)). When an offer to enter a contract is based on the race of the other party, "[i]t does not matter if the recipient discriminates in order to advance some further benign 'intention' or 'motivation.'" *Students for Fair Admissions*, 600 U.S. at 289 (Gorsuch, J., concurring).

## CONCLUSION

The Alliance has presented direct evidence sufficient to support its claim of racial discrimination in violation of § 1981. If Southwest fails to produce contrary evidence or a compelling justification that meets the stringent requirements of strict scrutiny, the Court should grant the Alliance's Motion for Summary Judgment on its § 1981 claim.

Dated: April 10, 2025                                              Respectfully submitted,

CHAD MEACHAM                                                       HARMEET K. DHILLON
Acting United States Attorney                                      Assistant Attorney General
Northern District of Texas                                         Civil Rights Division


*/s/ Kenneth G. Coffin*                                            */s/ Jenna Grambort*
Kenneth G. Coffin                                                  CHRISTINE STONEMAN (DC Bar No. 462557)
Assistant United States Attorney                                   Chief
Texas Bar No. 24076986                                             JENNA GRAMBORT (CA Bar No. 273542)
1100 Commerce Street, Third Floor                                  Trial Attorney
Dallas, Texas 75242-1699                                           Federal Coordination and Compliance Section
Telephone: 214-659-8646                                            Civil Rights Division
kenneth.coffin@usdoj.gov                                           U.S. Department of Justice
                                                                   950 Pennsylvania Avenue NW – 4CON
                                                                   Washington, DC 20530
                                                                   Telephone: (202) 307-2222
                                                                   jenna.grambort@usdoj.gov

**STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA**                                    8